UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KELLY CHANCE,

                              Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

<u>DECISION & ORDER</u>

18-CV-342P

## **PRELIMINARY STATEMENT**

Plaintiff Kelly Chance ("Chance") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket ## 6, 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 12). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

    (1)    whether the claimant is currently engaged in substantial gainful activity;

    (2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

    (3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

    (4)    if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and

    (5)    if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

**II.     Chance's Contentions**

Chance contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 10-1, 13). In his decision, the ALJ determined that Chance retained the mental RFC to follow simple and detailed instructions that can be learned in 6 months or less, but not complex instructions, and to engage in occasional interaction with the public, coworkers and supervisors, but that she needed to avoid jobs with fast pace and/or strict production standards. (Tr. 16). Chance challenges this determination on the grounds that the ALJ failed to properly apply the treating physician rule to the opinions rendered by her treating psychiatrist, Richard Wolin ("Wolin"), MD. (Docket ## 10-1 at 22-30; 13 at 5-9). She also maintains that the ALJ did not properly account for the social interaction limitations identified by the non-examining state agency consultants Dr. Tom England ("England") and Dr. H. Tzetzo ("Tzetzo"). (Docket ## 10-1 at 18-22; 13 at 1-5).

**III.    Analysis**

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). When making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work

4

activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221

(N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider

all the relevant evidence, including medical opinions and facts, physical and mental abilities,

non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*,

2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370

F. App'x 231 (2d Cir. 2010).

An ALJ should consider "all medical opinions received regarding the claimant."

*See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R.

§ 404.1527(d))[1]. Generally, a treating physician's opinion is entitled to "controlling weight"

when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R.

§ 404.1527(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of

a claimant's treating physician as to the nature and severity of an impairment is given controlling

weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in the case record")

(internal quotations and brackets omitted). Thus, "[t]he opinion of a treating physician is

generally given greater weight than that of a consulting physician[] because the treating

physician has observed the patient over a longer period of time and is able to give a more

detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4

(W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a

treating physician must consider various 'factors' to determine how much weight to give to the

---

[1] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

5

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider the "*Burgess* factors":

(1) the frequency of examination and length, nature, and extent of the treatment relationship,

(2) the amount of medical evidence supporting the opinion,

(3) the consistency of the opinion with the record as a whole,

(4) whether the opinion is from a specialist, and

(5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see also Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is entitled to controlling weight[;] . . . if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'"). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion." *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d at 32); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations, and quotations omitted). "This requirement allows courts to properly review ALJs' decisions and

6

provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

The record in this case demonstrates that Wolin provided psychiatric treatment to Chance beginning in 2010 and continuing through the time of the administrative hearing in June 2016. (Tr. 37, 65, 324-25). On March 24, 2014, he authored an opinion assessing Chance's work-related mental limitations. (Tr. 456-61). In the opinion, Wolin opined that Chance suffered from Bipolar I disorder, obsessive compulsive disorder ("OCD"), posttraumatic stress disorder ("PTSD"), and generalized anxiety disorder ("GAD"). (*Id.*). He indicated that she received individual mental health treatment and attended a womens group, both on a weekly basis. He assessed that she had a Global Assessment of Functioning ("GAF") of 65.

Wolin assessed that Chance was "unable to meet competitive standards"[2] for the work-related functions of maintaining regular attendance and being punctual within customary, usually strict tolerances, working in coordination with or proximity to others without being unduly distracted, and completing a normal workday and workweek without interruptions from psychologically based symptoms. (*Id.*). He also assessed that Chance was "seriously limited"[3] in her ability to maintain attention for two-hour segments, make simple work-related decisions, deal with normal work stress, carry out detailed instructions, set realistic goals or make plans independently of others, deal with the stress of semiskilled and skilled work, travel in unfamiliar places, and use public transportation. (*Id.*). According to Wolin, Chance had a "limited but

---

[2] This phrase was defined to mean the "patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (Tr. 458).

[3] This phrase was defined to mean the patient's "ability to function in this area is seriously limited and would frequently be less than satisfactory in any work setting." (Tr. 458).

7

satisfactory" ability to remember work-like procedures, understand, remember, and carry out very short and simple instructions, sustain an ordinary routine without special supervision, perform at a consistent pace without an unreasonable number and length of rest periods, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, understand and remember detailed instructions, interact appropriately with the general public, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (*Id.*). Wolin opined that Chance was not limited in her ability to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and be aware of normal hazards and take appropriate precautions. (*Id.*). According to Wolin, Chance would likely be absent from work more than four days per month and would be unable to engage in full-time competitive employment on a sustained basis. (*Id.*).

On May 31, 2016, Wolin rendered another assessment of Chance's mental work-related functioning. (Tr. 744-49). He diagnosed Chance with Bipolar II disorder, OCD, PTSD, and GAD. (*Id.*). In his opinion, he noted that since 2010 Chance had been receiving mental health treatment at Horizon Health where he worked and that her treatment included individual counseling sessions. (*Id.*). Wolin opined that Chance had marked difficulties in her ability to maintain social functioning and concentration, persistence or pace and that she suffered from moderate limitations in her ability to perform activities of daily living. (*Id.*). He also indicated that she had suffered three episodes of decompensation during the previous year. (*Id.*).

Wolin assessed that Chance was "seriously limited"[4] in her ability to remember work-like procedures, understand, remember, and carry out very short and simple instructions,

---

[4] This phrase was defined to mean the patient's "ability to function in this area is seriously limited and would frequently be less than satisfactory in any work setting." (Tr. 746)

8

maintain attention for two-hour segments, maintain regular attendance and be punctual within customary, usually strict tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, deal with normal work stress, understand, remember and carry out detailed instructions, set realistic goals or make plans independently of others, and deal with the stress of semiskilled and skilled work. He further opined that Chance was limited but satisfactory in her ability to sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, respond appropriately to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, travel in unfamiliar places, and use public transportation. (*Id.*).

According to Wolin, Chance suffered from chronic pain that was exacerbated by stress, anxiety, and depression. (*Id.*). He opined that "even a minimal increase in mental demands or change in [Chance's] environment" would likely cause her to decompensate. (*Id.*). He further opined that Chance would likely be absent from work more than four days per month and would be unable to engage in full-time competitive employment on a sustained basis. (*Id.*).

In his decision, the ALJ summarized the opinion evidence of Chance's mental functioning contained in the record, including brief descriptions of Wolin's opinions, fuller summaries of the opinions submitted by the state agency consultants Dr. Tzetzo, a

9

non-examining physician, and Dr. Janine Ippolito ("Ippolito"), an examining psychologist, and an extensive summary of the testimony provided by non-examining psychologist Dr. England, who testified at the administrative hearing at the ALJ's request. (Tr. 19-20, 22-25, 40-52). Ultimately, the ALJ gave great weight to the opinions of the non-examining consultants Tzetzo and England, limited weight to Ippolito's opinion, and little weight to Wolin's opinions. (*Id.*).

With respect to his weighing of Wolin's opinions, the ALJ provided the following reasoning:

> The undersigned affords Dr. Wolin's opinions little weight[] because they are not well supported by medically acceptable clinical and laboratory diagnostic techniques and the opinions are inconsistent with other substantial evidence in the record (SSR 96-2p). Dr. Wolin's own treatment notes indicate the claimant did not have a SPMI, which the medical expert testified stands for severe persistent mental illness (Ex. C7F/159). Furthermore, an individual's [RFC] and whether an individual is "disabled" under the Act are not medical issues regarding the nature and severity of an individual's impairments but are administrative findings that are dispositive of a case. The regulations provide that the final responsibility for deciding these issues is reserved to the Commissioner. Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. However, the opinions have not been ignored (SSR 96-5p).

(Tr. 25).

Chance challenges the ALJ's weighing of the opinion evidence on the grounds that the ALJ improperly gave more weight to the opinions of the non-examining physicians and failed to provide good reasons for his determination to do so. (Docket ## 10-1 at 24-30; 13 at 5-9). I agree that the ALJ's explanation for the weight he assigned to Wolin's opinion is largely conclusory and fails to explicitly evaluate the requisite factors outlined above. Although the ALJ identified several of the factors elsewhere in his decision, he failed to explain how those factors applied to and informed his evaluation of Wolin's opinions in this case. (Tr. 23, 25).

10

For example, it is unclear that the ALJ appreciated the significant treating relationship that existed between Wolin and Chance. Nowhere in the opinion does the ALJ discuss the first *Burgess* factor – the "frequency, length, nature, and extent of treatment" that Wolin provided to Chance. This omission is particularly striking given Chance's numerous severe mental health impairments (bipolar disorder, OCD, PTSD, and GAD), as well as her very extensive treating history. *See*, *e.g.*, *Estrella*, 925 F.3d at 97 (failure to address relationship between treating source and claimant is "especially relevant" because this factor "is of heightened importance" in cases involving mental illness, particularly those involving temporary periods of improvement). Indeed, the ALJ's recitation of the factors he considered when determining the weight to assign to Wolin does not include this factor. (Tr. 23 ("An examining and treating source is entitled to such weight as is warranted after consideration of multiple factors. The factors include testing and consultative evaluations by specialists; supportability, including the degree of explanation and support by objective evidence; consistency with the record as a whole; degree of specialization in the area of medicine involved; and other factors, including awareness of other evidence in the record, and understanding of social security disability programs and requirements.")).

Significantly, the record demonstrates that Wolin provided ongoing mental health treatment to Chance for approximately six years between 2010 and 2016. (Tr. 556-737). During that time, Wolin typically met with Chance monthly, repeatedly adjusted Chance's psychotropic medications to address fluctuations in her mental health symptoms, and reviewed notes authored by, and conferred with, Elizabeth Cristina ("Cristina"), LMSW, Chance's counselor with whom

she regularly met on a semiweekly basis for individual therapy sessions.[5] (*Id.*). The ALJ's decision did not address that treatment history.

Of course, failure "to refer explicitly to each regulatory factor in determining the weight to assign to a treating physician's opinion" does not warrant remand where the decision, read in its entirety, supports the conclusion that the ALJ "conscientiously applied the substance of the treating physician rule." *Jasen v. Comm'r of Soc. Sec.*, 2017 WL 3722454, *11 (W.D.N.Y. 2017); *see Estrella*, 925 F.3d at 96 ("failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error" but does not require remand if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed") (internal quotations omitted). Having carefully reviewed the decision with that standard in mind, I cannot conclude that the treating physician rule was properly applied in this case.

A "searching review" of the ALJ's decision reveals little insight into the ALJ's determination to discount Wolin's opinions in favor of those provided by the non-examining consultants.[6] Moreover, several of the considerations suggested by the decision as possible reasons for ALJ's determination are not well-supported by law or fact. *See Estrella*, 925 F.3d at 96 (remand not required if "the record otherwise provides 'good reasons'" for the weight assigned to the treating source). For instance, the ALJ repeatedly noted that England had posited

---

[5] Although the record contains Wolin's treatment notes, it does not appear that Cristina's notes, with the exception of one or two, were included. Given the significant frequency of sessions with Cristina, on remand the ALJ should consider whether to attempt to obtain these records.

[6] In the paragraph assigning little weight to Wolin, the ALJ noted that Wolin had indicated in his treatment notes that Chance did not suffer from a severe persistent mental illness ("SPMI"). (Tr. 25 (citing Tr. 713)). It is unclear whether, and, if so, the extent to which, the ALJ relied on this fact when discounting Wolin's opinions. In any event, in the absence of additional information regarding the significance – in functional terms – of whether an individual suffers from an SPMI, this Court is unable to evaluate whether this constitutes a valid reason for discounting Wolin's opinions.

that Wolin's more restrictive limitations might also reflect Chance's physical impairments, of which Wolin was likely aware due to his treating relationship. (Tr. 20, 22 ("England testified that Dr. Wolin could have been considering some of the physical limitations in his Mental Medical Source Statements")). A review of Wolin's treatment notes, however, reveals little discussion of Chance's physical impairments; moreover, nothing in Wolin's opinions themselves suggests that the limitations he assessed account for her physical impairments. To suggest that they do is speculative at best. To discount them on that speculative basis is improper and would subvert the treating physician rule.

The ALJ's decision also suggests that he may have discounted the restrictive limitations assessed by Wolin because he found them inconsistent with Chance's "conservative treatment and the relatively benign objective evidence" including "clinical observations indicat[ing] that she would be able to perform full-time work within the mental parameters of the [RFC]." (Tr. 21). In characterizing Chance's mental health treatment as "conservative," the ALJ emphasized that she had never been hospitalized or required emergency room treatment for her mental symptoms. The ALJ did not mention in that discussion that Chance's ongoing and extensive treatment history spanned more than five years and generally involved attendance at individual therapy sessions twice weekly, womens groups weekly, and psychiatric appointments monthly for management of a variety of different psychotropic medications. (Tr. 556-737).

Additionally, relying significantly on England's summary of Wolin's treatment notes, the ALJ's decision appears to suggest that Wolin's opined limitations were inconsistent with overall improvement in Chance's mental health condition with treatment, as evidenced by slightly higher GAF scores and an overall reduction in symptoms. (Tr. 20-21). However, the treatment notes, while recording some progress, repeatedly noted that her symptoms fluctuated in

13

severity. (*Compare*, *e.g.*, Tr. 660 ("[a]t this particular point there is a general stabilization of the severity of her symptomatology and behavior"), 698 ("excellent clinical improvement") and 704 ("significant progress in treatment"), *with* 664 ("symptoms had increased"), 652 (despite "radical growth," anxiety is re-exacerbated as evidenced by trichotillomania), 671 (OCD symptoms are worse), 710 (noting depressive episode in which Chance could not get out of bed and pulled out her hair and ingested it) and 729 (emotional lability characterized by OCD and anxiety symptoms).

Finally, the ALJ's decision strongly suggests that he found Wolin's limitations inconsistent with Chance's ability to sustain part-time employment at a laundromat. (Tr. 22 ("work activity . . . suggest[s] involvement in a range of daily activities inconsistent with the allegation of disability precluding all work"), 25 ("claimant has worked part time through the period at issue, which certainly suggests intact functioning")). As an initial matter, Chance's testimony suggests that her employer was notably accommodating of her impairments. As the ALJ acknowledged, Chance's employer permitted her to take four "ten to fifteen-minute" breaks for stretching; he did not note that her employer permitted those four breaks during each two-hour shift. (Tr. 17, 58). Further, it is not entirely clear that the breaks were needed solely for stretching. (Tr. 59 ("I told him that that's what I have to do [and] I'm quite open with him about it[;] [h]e's known about my psychiatric problems"). In any event, as his treatment notes make clear, Wolin knew that Chance was working on a part-time basis (Tr. 664), and he specifically opined that "even a minimal increase in mental demands" would likely cause her to decompensate and that she would be unable to engage in work on a full-time basis (Tr. 748-49).

In sum, after careful review of the decision, I am unable to conclude that good reasons support the ALJ's decision to discount the opinions from Wolin, Chance's treating

psychiatrist. *See*, *e.g.*, *Damiano v. Comm'r of Soc. Sec.*, 2019 WL 2330853, *9 (E.D.N.Y. 2019) ("[i]n light of the ALJ's failure to provide 'good reasons' supported by substantial evidence for declining to assign controlling weight to the treating physician's medical opinion, the [c]ourt concludes the ALJ traversed the substance of the treating physician rule"); *Ely v. Colvin*, 2016 WL 315980, *4 (W.D.N.Y. 2016) ("[h]aving reviewed the decision, the record, and [the physician's] opinion, I conclude that the three grounds provided by the ALJ for rejecting portions of [the physician's] opinion do not constitute 'good reasons'"). Although the record, which includes testimony from a medical expert requested by the ALJ to assist him in resolving the conflicting medical evidence, may ultimately support the ALJ's decision to accord less than controlling weight to Wolin's opinions, the ALJ must articulate and provide good reasons supported by the record for doing so. *See Drozdowski v. Colvin*, 2016 WL 5402698, *8 (W.D.N.Y. 2016) ("[t]here may be reasons to discount [the treating physician's] opinion or to give greater weight to other conflicting testimony and opinion evidence in the record, but the ALJ erred by failing to specifically state those reasons"). Because the ALJ failed to provide "good reasons" for rejecting the opinions authored by Chance's treating psychiatrist, I find that remand is warranted. *See Halloran*, 362 F.3d at 33 ("[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion").

   I decline to reach Chance's remaining contentions. *See Erb v. Colvin*, 2015 WL 5440699, *15 (W.D.N.Y. 2015) (declining to reach remaining challenges to the RFC and credibility assessments where remand requiring reassessment of RFC was warranted).

15

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and Chance's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       September 20, 2019